International Game Technology, 2007-14-19 In this case, the district court failed to make any findings as to the level of ordinary skill required and also failed to view the 102 patent through the eyes of a person of ordinary skill. So you ask the same thing, vacate and remand. We believe in this case, your honor, that at a minimum you could vacate and remand, but we also think that the record is sufficiently developed here in terms of the expert testimony, which is largely one-sided in our favor. This case is appropriate for reversal. The district court said the specification was devoid of any structure, but that is plainly not so. The specification here clearly discloses a structure capable of performing the claimed functions. It is not a generic microprocessor or any type of gaming machine. It's specific. It is a microprocessor-based gaming machine with appropriate programming. So already, this specification defines a specific purpose machine for performing the claimed functions. And coupled with the undisputed knowledge of the person of ordinary skill in the art concerning their ability to easily program the functions that are claimed, under this court's precedent in All Voice, Atmel, Dossal, and many others, that is enough to render the claim definite. Aristocrat's expert defined the person of ordinary skill in the art as one having several years of experience in the design of games in the gaming industry with typically a BS in engineering and with the ability to program microprocessors. In the record below established, without dispute, we believe that the structure described in the specification, which is microprocessor-based gaming machines, was the standard at the time the 102 application was filed in 1994. Aristocrat's chief technology officer, that was Mr. Phillips, testified without contradiction that microprocessor-controlled video slot machines have been common in the gaming industry since the 1980s. It was common practice to build on existing game platforms and to modify the software when needed. That's at JA 732. And Aristocrat's expert stated, again without contradiction from IGT's expert, that such a modification to the software here would be a simple and straightforward programming task, well within the capabilities of the person of ordinary skill. So this case, we believe, is on all fours with Dossal and Atmel and All Voice and others. For example, in All Voice, this court quoted with approval the declaration of the patentee's technical expert that a skilled artisan reading the specification would recognize that preparing the software instruction at issue would be a trivial matter, well within the reach of the person of ordinary skill. And so quoting the court's finding in KSR that a person of ordinary skill is also a person of ordinary creativity, not an automaton, the court in All Voice reversed the finding of indefiniteness, holding that the person of ordinary skill would understand the bounds of the claim. And that is true here as well. The specification discloses a gaming machine using a microprocessor with appropriate programming, and it was undisputed that one of skill and the art could easily implement that program. Well, the appropriate programming, I guess, is the catch. Appropriate really is awfully open-ended. It's pretty much the same as saying anything works, as far as I can see. Which, again, gets us into the basic problem here, which is we're dealing with, both in this case and in the last one, the problem of functional claim. We know that Congress did not want to have pure functional claim. So they put some significant, we think, restraints on functional claims. To say appropriate programming suggests functionality is all you need to have. I don't believe so, Your Honor, because here the specification clearly describes a microprocessor-based gaming machine as the structure with appropriate programming. Now, the appropriate programming is the functions that are defined. I think we didn't have the right microprocessor. This is the consequence of a high-tech court. We need a filter on the amplifier here. The functions, there are three specific functions, and this is not a question of any microprocessor-based gaming machine, per se, would fall within the scope of the claim. There are very specific identified functions here. In particular, the function of how the program or the microprocessor defines the winning opportunities is based on a specific formula that's set forth in the specification, indeed is set forth in the claim. So this is not, I believe, a question of simply any program will do. It has to be the program that's implementing the claim function. Now, in the Dossal case, this court made clear that if algorithms or if programming is routine and known to a person of ordinary skill, there are specific programs which perform those functions do not need to be disclosed. That's what Dossal said. As long as known algorithms exist, here appropriate programming falls within the same scope of the Dossal case because the testimony was undisputed that a person of ordinary skill would easily be able to understand and write a program that could implement the claim functions. Now, what does IGT say? They don't really seriously contest that the specification contains the structure of a microprocessor-based gaming machine with appropriate programming. Instead, they rely on the district court's reliance on a supposed bright-line rule that IGT itself advocated, that there must be a specific program or algorithm disclosed in the specification else the claim is invalid. But the cases that the district court relied on are WMS Gaming and Harris, and neither WMS Gaming nor Harris discussed indefiniteness at all. The cases that do address indefiniteness are the Dossal case, the medical instrumentation case, the Intel case, where this court has confirmed that as long as a person of ordinary skill would be easily able to implement the programs that are associated with the functions, that that is enough to satisfy the definiteness requirement. This court has never established, to our knowledge, a rigid algorithm rule that must be applied in every means-plus function case. Rather, instead, it has considered each case on its specific facts and has always focused on the knowledge of the one of ordinary skill in the art. And as we've explained here, there was simply no dispute that one of skill could program the disclosed microprocessor-based gaming machine to perform the claim functions. In fact, if you compare the disclosure here to the disclosure in WMS Gaming, the patent in that case, very similar technology, of course, slot machine, video slot machines, the disclosure here contains the mathematical formula that defines the winning opportunity selections, and it contains tables of examples which, if anything, is more explicit than the single figure, figure six, in the WMS Gaming patent. Let me ask you this. Suppose I'm a competitor and I want to achieve the same function as your patent achieves, but I want to do it with a different way of getting there, with a microprocessor. Is there any way I can do that without infringing your patent? It's a question of infringement, Your Honor. Well, I know it is, but what I'm really asking is, of course, do you cover all means conceivable, disclosed, or possibly arising in the future for getting to the function? We would believe that as long as it is a microprocessor-based gaming machine that is performing the claim functions, and that therefore falls within the scope of the claim, then arguably that would fall within the scope of this claim. Can you think of an example where it wouldn't? I can't think of an example, but it certainly could be later down the road that some technology would be developed, and then the question is whether… Keeping within the microprocessor. Keeping within the microprocessor? No, I believe the answer to that question is no, it would fall within the scope of the claim. The question of indefiniteness, of course, is one that's asked as of 1994, and in 1994, again, the testimony was unrebutted, that any knowledge of the person of ordinary skill, the person of ordinary skill, would be able to implement this invention. If ten years from now there becomes a question about what would be equivalent to its disclosure and specification, that would be a question we would have to answer later down the road, but for the purposes of indefiniteness, we believe that the disclosure is sufficient. If I heard your earlier answer, I don't think you'd ever get to an equivalence question. I think your earlier answer was that there would be literal infringement, and anything that employed a microprocessor to achieve these functions. A microprocessor that has been programmed to implement these three functions in a gaming machine, I believe, would fall within the scope of that claim. I wanted to briefly address the other issue, which is simply whether or not there has been a sufficient linking to the disclosure and the specification with the claim functions, and again, this must be viewed through the eyes of the person of ordinary skill, and as this course stated in Biomedino, it's not a high bar. All that is necessary is that one's skill in the art be able to understand what structure, disclosure, and specification performs the function. Here, the specification stated at the very beginning of the deferred embodiments that the methodology of the embodiments would be introduced on any standard microprocessor-based gaming machine, and we believe that it would be common sense to a person with several years of experience in the gaming industry that they would clearly be able to link the claimed functions to that microprocessor-based gaming machine. If there are no other questions, I'd like to save my remaining time for a follow-up. We'll do that, Mr. Ferguson. Mr. Sarles. Good morning, Your Honor. Jeffrey Sarles for the FLEs. May it please the Court. I think Judge Bryson's question hit on a fundamental defect here, which is the use of the word appropriate to modify programming. All gaming machines today are run by programmed microprocessors. What distinguishes them, in addition to the functions, is the program. Simply putting the word appropriate before program is the same as claiming any computer-based gaming machine that performs the recited functions, as Mr. Ferguson just conceded. And yet there could be dozens of different ways to perform these functions. If you allow this patent to cover all of them, that's going to proclose inventors from developing superior programs and, therefore, is going to harm innovation. Under aristocrats' theory, you could obtain a device patent just by imagining a novel function. You just state the function in the claim, followed by a means term, and then in the written description you throw in microprocessor-based gaming machine with appropriate programming. If there were a patent infringement suit, how would you compare the accused device to the patent? As long as it performed the functions, produced the results that you're looking for, it would automatically infringe under their theory. Or at least, as probably the only reasonable meaning of the term appropriate, is that it works, it's functional. And so this is, again, claiming in functional terms. But there's a lot of disclosure here. Well, there isn't a lot of disclosure here in terms of structure. You've got a microprocessor-based gaming machine, which they all are. You have a program that's undefined. It could be any program. In fact, it's all programs, any program that produces these functions. Now, it's true on appeal that aristocrat has pointed to figures and tables in the patent. They didn't raise that below a structure. But even if it's not waived, all you have to do is look at those figures and tables, and you will see that they are nothing except examples of arrays of selected symbol positions and pay lines. In other words, what aristocrat calls winning opportunities. They don't give you a clue as to what the machine would have to do in order to determine what those pay lines would be. Or how it would pay a prize by figuring out whether the selected symbol positions matched up with the predetermined pay lines. There's nothing whatsoever to give you an idea of what steps the program would have to go through in order to achieve that. And it's just way too broad. Because, as Judge Bryson pointed out, it would cover any computer-based gaming machine that performs these functions. And that's not disclosure of structure. In fact, the impact of allowing use of a boundless term like appropriate would extend beyond the gaming machine industry. I mean, you start having MPF claims, means plus function claims, disclosing only appropriate transmission systems or appropriate connectors. And this is in conflict with the mandate of the patent laws, the distinct and particularity requirement. And I think that's why this court has insisted that computer-generated means plus function claims disclose a special purpose computer. Something that's more limited in terms of what the computer will do, rather than just a generic general purpose computer as is disclosed in the 102. Charles, what case do you think, or what case or what cases in this court most definitely, clearly, in your view, unequivocally state that requirement? That's three adjectives. I think if you look at the WMS gaming and Harris cases, they're a little different. Every case is a little different. You say look at those in tandem. In tandem. Because if you look at WMS gaming, there was one algorithm disclosed. And this court said, well, look, you can't claim structure that's broader than that single algorithm. And it was very similar in the Harris case. There was a two-step algorithm disclosed. They said you couldn't claim structure over all algorithms, including one-step ones. Well, here where there's no algorithm disclosed, there's no limitation on the program whatsoever, how could you have structure that's so broad that it would cover any and all computer-based gaming machines that perform this function? So I think based on those precedents, the algorithm rule that the district courts have adopted really follows from those precedents. But I don't think that it's necessary for this court to adopt that rule in order to affirm. All that's actually necessary is for you to say that appropriate program is not sufficient disclosure of structure, because the word appropriate is not really a limitation. Now, if a standard microprocessor base is not sufficient structure, what do you need here? What should they have had? Programming, source code, object code? What would have sufficed? I don't think it's necessary to have a source code, but something to indicate what steps the program would go through. One of the district courts suggested that a flow chart might solve it. Council mentioned that in DOSL this court said that you don't need an algorithm. What the court actually said in DOSL is that you don't need a mathematical algorithm. But if you look at the word algorithm in the broad sense of at least laying out what steps the computer has to go through, and if you consider what the functions were in this patent of predetermining these pay lines and figuring out how to pay a prize based on the selected symbol positions by the player, there has to be some indication of what the computer would do to perform those functions, what the program would do. Because otherwise, as Judge Bryson said, every computerized gaming machine that produces these functions is covered, and that's way too broad. I'm going to ask you an unusual follow-up question. Did you look at the 951 patent in the first case? Not carefully. Because that had a lot of boxes and directions. Again, this patent has other things in it, but all of them are functional. In fact, if you look at Aristocrat's reply brief at page 24, it describes the figures and tables as merely, and this is a quote, corresponding illustrations of the performed functions, unquote. Well, these are just illustrations of the functions. They can't be structured, because structure can't be disclosed in functional terms, as this court has admitted. I certainly understand your argument about how function cannot be allowed to be the essential or practical predicate for patentability solely. But on the other end of the spectrum, we have examples of cases in which the structure is so obvious, and is usual in some cases, at least not really part of the inventive, for lack of a better term, point of novelty, that it's unclear to me where we would draw the line with respect to those kinds of inventions. For example, suppose you have a machine which is described in the patent as a device that's designed to show the person their total winnings, and the more they've won, the larger the numbers appear before the person at the top of the slot machine. And part of the patent, part of the claim says, a computer microprocessor programmed with appropriate programming to add up the winnings. That's so simple that you hardly need to have a description in any detail of the process of adding numbers in a microprocessor. Would that be enough to invalidate that claim? Well, I think it depends. I mean, if it suggests the steps, then we have to go through some adding steps. Sure, one of the steps is adding the person's winnings. But I think there would be a concern there, too, because couldn't somebody come along and invent a microprocessor-based gaming machine that adds figures more efficiently? And so some kind of limitation, if you're looking for some kind of a rule, there needs to be some limitation. For example, in the DOSL case, which Aristocrat relies on so heavily, there were a couple of disclosures there that are much more limiting than those here. It disclosed known algorithms used to solve standard equations. Well, that's pretty broad, but it's a lot narrower than appropriate programs. And in addition, the DOSL case disclosed an algorithm, a series of steps, namely data reception, computation, solving equations, performing matrix and pseudo-conversion operations, and output to a display. There's just nothing like that here at all. All you've got is appropriate programming. And so in DOSL, you had a special-purpose computer, as this court has defined it. You did not have the just generic computer that they're claiming here as a way of foreclosing anybody else in the industry from developing a game that could perform similar functions. Now, Aristocrat relies heavily on its experts' declaration that he could have implemented the game-controlled means through the disclosures in the 102. Well, first of all, the test isn't whether he could have implemented them. The test is whether the specification discloses them. But in addition, suppose that he could implement a program. Again, the same problem is there. As long as the claim is any computer-based gaming machine with appropriate program, nobody else could come along and come up with a better program. And that's the fundamental defect with allowing a word like appropriate to define program. Because a computer by itself cannot be sufficient structure, at least for a gaming machine these days. It's got to be programmed. And if you don't have any indication of what the limit on the program is, then it just does not meet the definite requirement. I wanted to point out one other thing that struck me as I was preparing for this argument. When you look at the patent, it describes game-control means by using another means term. It says, by means of appropriate program. And so the game-control means asserted in the claim amounts to an appropriate programming means. And that's wordplay. That's not structure. And it doesn't meet the mandate of the statute. Finally, I just wanted to respond to Aristocrat's argument in their briefs that the district court erred by not engaging in a full Markman claim construction before moving an indefinite miss. Aristocrat has no authority for the formalistic requirement. But more important, it just wouldn't have made any difference here. Because for purposes of this motion, we can accept Aristocrat's construction of the functions in full. And yet you're still left with the only structure disclosed as a computer with appropriate programming. And that just doesn't suffice. In granting summary judgment, the district court took to heart what this court said in Honeywell, which is that a claim is invalid as indefinite if it's not amenable to construction. So to conclude, I would just say that the impact on the public and on innovation would be intolerable if you could get a patent just by disclosing a computer with appropriate programming. The district court's ruling that such a patent is fatally indefinite is consistent with the statute, with this court's precedence, and with sound policy and should be affirmed. Thank you, Mr. Sells. Mr. Ferguson has some time left to rebut. Thank you, Your Honor. I want to clear up a couple things. First of all, Aristocrat's expert didn't say that he could program the functions. He said that a person of ordinary skill in the art could easily program the functions. And that's really the inquiry. The inquiry is what the person of ordinary skill in the art could do upon reading the specification and what he or she would understand. Secondly, the— Well, but aren't those two different questions? I mean, it seems to me that you could have enablement, but that doesn't necessarily mean that you've described with specificity the particular structure. You've described—I mean, you could have a very specific description of one embodiment and then say, and we also claim anything else that performs the function. That would clearly be invalid, right? Even though it would be enabled for purposes of that one embodiment. I don't necessarily know if it would be invalid in light of that, because under this court's precedent and under the statute, what is required is that the claim term, the functions, be construed to cover the corresponding structure that's described in the specification. Well, but the structure I've just described is, number one, a particular structure, and number two, any other structure under the sun which performs this function. Clearly invalid, right? I think in that case it would come down to a question of what the person of ordinary skill in the art would understand to be any other structure. I don't believe that we want to encourage patentees to disclose things so broadly in that sense, and I think that that is consistent with what the court said in, I believe, the Biomedino case, where the structure that was disclosed was essentially no structure at all. It simply said equipment. Here, there is a specific structure, a microprocessor-based time machine. So we have a specific purpose computer already, and under this court's precedent in Dossal and others, simply disclosing that appropriate programming or known algorithms can perform the claim functions is enough in certain circumstances, as long as one of ordinary skill would understand how to implement those programs. And to answer counsel's question, that the claim may be broad doesn't mean it's indefinite. If we look at this court's precedent in the Intel case, 319 F3rd 1357, this court said that the fact that one may design around the invention, or one may design around the invention, by using a different protocol, but not by simply changing a circuit that uses the same protocol that's claimed in that particular patent. The same thing is true here. There is a specific function that's claimed. It's based on the mathematical formula of Ki through Km, where K is the number of rows selected in each column of Nm columns. A competitor could design around this patent by not implementing that specific formula. But if a competitor does implement that formula in the context of a microprocessor-based gaming machine, then we are entitled, as long as the prior art allows it, we are entitled to a claim that covers those functions. And from an infringement standpoint, we believe that we would be entitled to a finding of infringement. So, I see I'm past my time, or am I at my time? No, you're not quite past. If there are no other questions, we would conclude, we would ask that the court reverse, or at the minimum vacate, the finding of summary judgment. And we would also ask that if there is any remand, that it be made clear that the district court's finding with respect to international game technologies infringement, or lack of infringement, should be remanded for further consideration as well. Thank you, Mr. Ferguson. The case should be taken under review.